UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WAYNE  MUELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00087-SEB-MPB |
| | ) | |
| CITY OF GREENFIELD, | ) | |
| GREENFIELD POLICE DEPARTMENT, | ) | |
| CALEB  FREEMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Motion for Summary Judgment [Docket No. 39], filed on March 21, 2016. For the reasons detailed herein, the motion is GRANTED in part and DENIED in part.

**Factual Background**

On July 9, 2013, as part of the Greenfield Police Department's "Operation Pull Over"—a special project designed to detect and stop intoxicated drivers—Officer Caleb Freeman conducted a traffic stop of Mark Mueller, citing him for traveling left of center. Mueller had recently also been stopped by Officer Freeman for failing to signal 200 feet prior to making a turn. Feeling that he was being harassed by Officer Freeman, Mueller called 911 and requested that another officer be dispatched to the scene. He also placed a call to his parents, Plaintiff Wayne Mueller and his wife Marlyne, requesting that they

1

come to the scene to serve as witnesses. Shortly thereafter, Lieutenant Scott Laymon, the Officer in Charge for the July 9, 2013 night shift, arrived. Mark Mueller was asked to exit his vehicle and walked back to speak with the officers in front of Officer Freeman's patrol car, during which conversation he grew increasingly agitated and complained of harassment by the officers.

While Mueller was speaking with the officers near Officer Freeman's patrol car, his parents Wayne and Marlyne arrived, parking their vehicle in front of their son's. Lt. Laymon approached their vehicle and instructed multiple times that the parents remain inside, but, disobeying those commands, Wayne and Marlyne exited their vehicle and began accusing the officers of "picking on" their son. After briefly exchanging words with the parents, Lt. Laymon instructed Officer Freeman to prepare the citation for Mark Mueller. Officer Freeman walked back to his patrol car to finish preparation, at which point Lt. Laymon and Marlyne began shouting at one another. Officer Freeman then walked back to the rear of the Muellers' vehicle.

At this point, Plaintiff Wayne Mueller, who could be heard on Officer Freeman's dash cam, said, "You're just rookie and you're just picking on everybody." Defs.' Ex. E. He then, as also recorded, fell into the ditch adjacent to the shoulder of the road. *Id.* Immediately thereafter, Officer Freeman was observed in the dash cam, on top of Plaintiff, placing him under arrest. Officer Freeman stated: "You will not strike me sir." *Id.* at 23:03: 05–07. Plaintiff rejoined: "I didn't strike you." *Id.* at 23:03:09–10. Officer

2

Freeman then informed Plaintiff: "You are going to jail today for battery on a law enforcement officer." *Id.* at 23:03:10–15.

Officer Freeman explains more fully what was caught by video, saying that following his return to the group as they were located between Mark Mueller's car and his parents' vehicle, Plaintiff Wayne Mueller struck his arm, in response to which, Freeman reached for and grabbed Plaintiff's left arm in an attempt to use an arm-bar handcuffing technique to place Plaintiff under arrest. Plaintiff resisted by pulling away from his grasp, which resulted in the two men losing their balance and tumbling to the ground. Plaintiff, on the other hand, denies ever touching Officer Freeman and maintains that, in telling Officer Freeman to stop harassing his son, he had simply raised his hand, in response to which, Officer Freeman attempted the arm-bar takedown technique and threw him into the ditch.

After Plaintiff was handcuffed, he was placed in the back of Officer Freeman's patrol car and taken to jail. While in jail, his left wrist began to sting, and the next day, on July 10, 2013, he visited the Community Hospital Emergency Room where he learned that his left wrist was in fact fractured. Plaintiff has since had two surgeries on his wrist and continues to complain of residual pain and deficits in his range of motion.

As a result of the incident and arrest, Plaintiff was charged with Battery on a Police Officer and Resisting Law Enforcement, *State v. Mueller*, 30D02-1307-CM-000997. On June 20, 2014, he pled guilty to Resisting Law Enforcement, a Class A Misdemeanor; the Battery Count was dismissed.

On January 22, 2015, Plaintiff commenced the action against Defendants City of Greenfield, Greenfield Police Department, and Officer Caleb Freeman pursuant to 42 U.S.C. § 1983, alleging that "the acts and omissions of Defendant Officer Caleb Freeman constitute(d) an unlawful use of excessive, unreasonable force, all in violation of the 4th and 14th Amendments of the Constitution of the United States." Dkt. 1 at ¶ 17. Plaintiff also raised a state law claim against Defendants, alleging that Officer Freeman was negligent in using excessive, unreasonable and unnecessary force in placing him under arrest. *Id.* at ¶ 20.

On March 21, 2016, Defendants filed their motion for summary judgment on all counts. Dkt. 39. The motion became fully briefed on August 13, 2016, and is now ripe for decision.

**Legal Standard**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes as to material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See *id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the

4

existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 323.

## Analysis

### I.      Excessive Force Claims Against Officer Freeman

Plaintiff has alleged that Officer Freeman used excessive force in effectuating his

arrest. The Fourth Amendment guarantees citizens the right "to be secure in their persons

. . . against unreasonable . . . seizures" of the person. U.S. Const. Am. IV. This includes

the right to be free from an unreasonable seizure conducted through the use of excessive

force. Whether the force employed by an officer during seizure is constitutionally

excessive depends on its "objective reasonableness," which is judged "from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight" and is considered in light of the specific facts and circumstances of that

particular case.[1] *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (citing *Terry v. Ohio*,

392 U.S. 1, 20–22 (1968)); *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (noting

that the question is "whether the totality of the circumstances justifie[s] a particular sort

of seizure").

---

[1] Plaintiff pleaded in his Complaint that Officer Freeman's use of excessive force violated the Fourth and
Fourteenth Amendments, as well as Indiana common law. See Dkt. 1. On summary judgment, Defendants
argue that any Fourteenth Amendment claim for substantive due process is subject to dismissal and this
case should be analyzed under only the Fourth Amendment standards. Dkt. 40. Plaintiff has not
responded to Defendants' argument concerning any Fourteenth Amendment Due Process claim, but has
conceded that Indiana's standards governing excessive force claims are analogous to the Fourth
Amendment. Dkt. 50 (citing *Bridgewater v. City of Indianapolis*, 2016 WL 1117646 (S.D. Ind. 2016);
and *Wilson v. Isaac*, 929 N.E. 2d (Ind. 2009)). We do not interpret Plaintiff's Complaint to have pled a
separate Due Process violation under the Fourteenth Amendment, but rather that Officer Freeman's
excessive force violated the Fourth Amendment, which, of course, is enforceable against the States
through the Fourteenth Amendment. *See Camara v. Mun. Court of City & Cnty. of San Francisco*, 387
U.S. 523, 528 (1967). Accordingly, we interpret this cause to be comprised of two counts—a Fourth
Amendment violation for excessive force and an Indiana common-law tort for excessive force—both of
which are governed by the standards set out in *Graham* and discussed in this Order.

Officer Freeman has moved for summary judgment on the claims against him on two grounds: (1) that his actions were objectively reasonable in light of the circumstances and therefore did not violate the Fourth Amendment, and (2) that he enjoys qualified immunity from liability in this case, because even if he committed the actions alleged by Plaintiff, those actions would not have violated any clearly established Fourth Amendment right.

When an officer raises the defense of qualified immunity, the plaintiff bears the burden of showing the existence of his clearly established constitutional right either by pointing to a clearly analogous case establishing a right to be free from the conduct at issue, or by showing that the force used was so plainly excessive that no reasonable officer could have believed that it would not have violated his rights. *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008).

Here, Plaintiff has not pointed to any closely analogous case establishing the right to be free from the specific conduct he alleges Officer Freeman committed; instead, he has argued that "[n]o reasonable officer could have believed the Constitution would permit an officer to perform an arm-bar takedown maneuver to handcuff an arrestee without first notifying him [that] he was under arrest and providing him an opportunity to peacefully surrender and be handcuffed based solely on the act of getting out of a car when instructed not to, using profanity, and gesturing with his hands in a heated argument." Pl.'s Resp. at 20.

7

We interpret Plaintiff's argument to be that, when viewing the facts in the light most favorable to him, Officer Freeman's use of force was so plainly excessive that no reasonable officer could have believed that it would not have violated Plaintiff's constitutional rights. This line of argument is best illustrated by the Seventh Circuit's decision in *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) and its progeny. In *Clash*, the defendant officer was accused of needlessly shoving the plaintiff into a squad car, resulting in a traumatic injury to the plaintiff's knee. *Id.* at 1047. In denying the defendant's motion for summary judgment, the district court held that the facts before the court, when viewed in the light most favorable to the plaintiff, revealed that the alleged shove might have been "wholly gratuitous" in light of the minimal degree of harm presented by the plaintiff at the time. *Id.* at 1048. The trial court further stated that while the plaintiff's claim survived summary judgment, "the paucity of evidence proffered by plaintiff() suggest[s] that [he] may have difficulty at trial demonstrating both that the shove occurred and that it was an excessive use of force." *Id.* The Seventh Circuit affirmed the district court's decision and dismissed the appeal, holding that the factual disputes regarding the alleged shove, and its relationship to the harm presented by the plaintiff, drew into question the objective reasonableness of the officer's actions under the circumstances. *Id.* The court also held that because key facts were unknown and disputed, the qualified immunity claim was not sufficiently separable from the merits of the case to warrant an interlocutory appeal. *Id.*

8

The upshot of the *Clash* decision is two-fold: First, "it is clear that police officers do not have the right or shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (citing *Clash*, 77 F.3d at 1048). Second, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Clash*, 77 F.3d at 1048); *see also Chelios*, 520 F.3d at 692 (holding that because the disputed facts regarding the degree of the plaintiff's agitation, including whether he had made physical contact with the officer, weighed on the objective reasonableness of the force used by the officer to arrest him, a trial was required before a determination could be made as to whether the officer was entitled to qualified immunity).

The key facts in the case before us relating to our analysis of the objective reasonableness Officer Freeman's conduct likewise are in dispute. Officer Freeman maintains that he was struck by Plaintiff, prompting him to grab Plaintiff's left arm in an attempt to apply an arm-bar handcuffing technique. He contends further that it was Plaintiff's resistance to the arm-bar—specifically, his "pulling away" from his (Freeman's) grasp—that caused the two to tumble to the ground.  Plaintiff, in contrast, contends that he was simply engaged in a heated conversation with the officers in which he was expressing his belief that his son was being harassed. During the conversation, he raised his hand to make a non-confrontational gesture. Although his gesture "did not involve a fist, a punching motion, or any sudden movement," nor did it result in Plaintiff

actually touching Officer Freeman, Freeman nonetheless grabbed Plaintiff's left arm,

swung it behind Plaintiff's back, and threw him into the adjacent ditch before jumping on

top of him and handcuffing both arms behind his back. Aff. Wayne Mueller at ¶¶ 11–13.

Based on Plaintiff's facts, which we must accept as true at this stage of the

litigation, we cannot say that Officer Freeman's conduct was reasonable as a matter of

law in light of all of the circumstances.[2] We note that Officer Freeman has argued that,

even if a strike did not occur prior to the arm-bar takedown, he could have reasonably

believed such an assault was about to occur in light of Plaintiff's refusal to stay in his car,

the heated nature of the ensuing conversation, and Plaintiff's hand-raising gesture. See

Def.'s Br. at 15. Moreover, Officer Freeman argues that the threat of harm presented by

Plaintiff's potential arm-striking assault would have justified his use of an arm-bar

---

[2]      In reaching this conclusion, we have not relied on Plaintiff's submission of his expert Robert
Willis's affidavit, in which Willis proffers, among other things, his opinion as to whether Freeman
employed excessive and unreasonable force. Willis Aff. ¶¶ 6, 7, 11. Nor have we relied on the Greenfield
Police Department's policies and procedures regarding the escalating use of force, on which Mr. Willis
relied. *Id.* ¶ 13. Accordingly, we need not address Defendants' objections to this evidence. If Defendants
wish to pursue their objections at or in preparation for trial, they should file timely motions in limine and
*Daubert* motions seeking its exclusion.

         In addition, we note that Defendants have failed to explain the particular relevance of Plaintiff's
guilty plea to resisting law enforcement. Defendants attempt to argue that Plaintiff's guilty plea is in some
fashion contradictory of his claims in this suit. Indeed, Defendants maintain that they are entitled to
summary judgment under *Heck v. Humphrey*, 512 U.S. 477 (1994), which bars collateral civil attacks on
the validity of criminal convictions. Defendants' argument, to the extent we understand it, is either wholly
underdeveloped or entirely misplaced; we find no evidence supporting the claim that Plaintiff's
conviction under Ind. Code § 35-44.1-3-1(a)(1) contained an admission that he forcefully provoked
Officer Freeman prior to his arrest, nor do we interpret his claims as an attack on his conviction. To the
contrary, Plaintiff has admitted disobeying Lt. Laymon's commands to remain in his vehicle, and perhaps
to resisting Officer Freeman during and after the handcuffing, but nonetheless maintains that Officer
Freeman's allegedly unprovoked takedown of him in effectuating his arrest was unconstitutional. Such
claims are not subject to the *Heck* bar.

takedown to place Plaintiff under arrest. *Id.* at 15–16. We find Defendant Freeman's argument unpersuasive.

First, although Plaintiff's refusal to stay in his car after Lt. Laymon instructed him to do so may inform the overall reasonableness of Officer Freeman's conduct, a reasonable police officer's perception of *imminent* danger (prompting the imminent use of force) must necessarily be based on the facts immediately at hand. *See Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994) (discussing the Seventh Circuit's "historical emphasis on the shortness of the legally relevant time period," and noting that "we carve up the incident into segments and judge each on its own terms to see if the officer was reasonable at each stage"). By the time Officer Freeman grabbed Plaintiff's arm and took him to the ground, though the officers had had their initial commands go unheeded that the Muellers stay in their vehicle, thereafter, they all became engaged in several minutes of discussion as they stood together as a group on the shoulder of the road. Thus, the fact that Plaintiff had disobeyed Lt. Laymon's initial order to stay in his vehicle immediately after arriving at the scene would not have led a reasonable officer to believe, several minutes later during an ongoing conversation, that he was in imminent danger of being physically assaulted by Plaintiff absent some other provocation.

Regarding Plaintiff's hand-raising gesture, Plaintiff states that it was not threatening in any way, but rather was a typical, conversational use of his hands not unlike what occurs in many, if not all, conversations. It is undisputed that the conversation included Plaintiff's accusations that the officers were harassing his son by

11

selectively issuing him traffic citations. Though Defendants are correct that, under certain circumstances, an officer may have reasonable grounds to believe that trouble is imminent, in which case he need not wait for the trouble to ensue, but may take lawful steps to prevent the problem, *see Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998), we do not find the circumstances outlined in Plaintiff's version of the facts to have given rise to a reasonable concern that trouble was imminent so as to warrant the degree of force utilized by Officer Freeman. In other words, the harm presented by Wayne Mueller's use of profanity and his accusations of harassment during his conversation with the officers could not alone warrant Officer Freeman's preemptive use of force in placing Plaintiff in an arm-bar and throwing him to the ground.

Again, we emphasize that this conclusion is based exclusively on Plaintiff's version of the facts. Of course, if Plaintiff did, in fact, strike Officer Freeman in the arm, and in response, Officer Freeman grabbed Plaintiff's arm in an attempt to handcuff him and, in the course of that attempt, did not "throw" him to the ground, but instead simply lost his balance due to Plaintiff's pulling away from his grasp, our conclusion would be much different. However, because key facts are unknown and/or in dispute, we cannot say that Officer Freeman's conduct was reasonable as matter of law, nor can we disentangled any questions relating to qualified immunity. *See Clash*, 77 F.3d at 1048.

Accordingly, Defendants' motion for summary judgment on grounds that Officer Freeman is entitled to qualified immunity and that his conduct was objectively reasonable is DENIED.

II.     **Claims Against the City of Greenfield and the Greenfield Police Department**

In addition to naming Officer Freeman, Plaintiff has named both the City of Greenfield and the Greenfield Police Department as Defendants in his 42 U.S.C. § 1983 excessive force claim. This claim presents two problems: First, municipal police departments in Indiana lack the capacity to be sued under the Indiana Code and therefore also under 42 U.S.C. § 1983. *See Martin v. Fort Wayne Police Dep't.*, 2014 WL 1319337, at *13–14 (N.D. Ind. Mar. 28, 2014); Ind. Code §§ 36-1-2-10, 11, 23. Accordingly, we GRANT summary judgment in favor of the Police Department on all claims and DISMISS it as a Defendant from this action.

Additionally, there is no is no vicarious liability under 42 U.S.C. § 1983; thus, in order to hold a municipality such as the City of Greenfield liable for a constitutional deprivation, a plaintiff must establish that there is an express policy, widespread custom, or final policy-making decision that operates as the moving force behind the violation. *See Monell v. Dep't of Social Serv. of New York*, 436 U.S. 658, 691 (1978); *Rossi v. City of Chicago,* 790 F.3d 729, 737 (7th Cir. 2015). Plaintiff has made no attempt to allege or establish any such policy, custom, or common practice in this case, but rather appears to have named the City as a party solely because it was Officer Freeman's employer at the time of the arrest. We therefore also GRANT Defendants' motion for summary judgment on Plaintiff's section 1983 claim against the City of Greenfield. However, because Plaintiff has brought a state-law excessive force claim in this action, and the City has

13

raised no immunity defenses to that claim, the City shall remain a defendant on that claim

only.

## Conclusion

For the foregoing reasons, we <u>GRANT</u> summary judgment in favor of Defendant

Greenfield Police Department on all counts and <u>DISMISS</u> it from this suit. Summary

Judgment is also <u>GRANTED</u> in favor of Defendant City of Greenfield on Plaintiff's

excessive force claim brought pursuant to 42 U.S.C. § 1983. Defendants' motion for

summary judgment as to Plaintiff's remaining excessive force claims against Defendants

Officer Caleb Freeman and City of Greenfield is hereby <u>DENIED.</u>

IT IS SO ORDERED.

11/7/2016

_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Nicholas Calvin Deets
HOVDE DASSOW & DEETS LLC
ndeets@hovdelaw.com

Jarryd F. Anglin
SKILES DETRUDE
janglin@skilesdetrude.com

Paul T. Fulkerson
SKILES DETRUDE
pfulkerson@skilesdetrude.com

15